UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LONNY BOWERS and LEA BOWERS,<br>          *Plaintiffs*,<br><br>          *v.*<br><br>UNITED STATES OF AMERICA, *et al.*,<br>          *Defendants*. | Civil No. 3:12cv264 (JBA)<br><br><br><br><br>March 13, 2013 |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Lonny and Lea Bowers filed suit against Defendants United States of America, Andrew Tingley in his official and individual capacity as the Supervisory Deputy United States Marshal for the District of Connecticut, and Deputy U.S. Marshals John Does 1–4 in their individual and official capacities,[1] alleging violations of their Fourth Amendment rights to be free from unreasonable search and seizure pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (Count One), and violations of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 (Count Two). Under the FTCA, Plaintiffs claim false imprisonment/false arrest, trespass to chattels, conversion, intentional and negligent infliction of emotional distress, and negligent supervision.[2] Defendants move [Doc. # 25] to dismiss Plaintiffs' Complaint for failure to state a claim. For the reasons that follow, Defendants' motion is granted.

---

[1] Plaintiffs had also filed suit against the United States Marshal Service, but concede in their opposition brief that any Federal Tort Claims Act claims against the agency or individual officers are improper. Thus, the only FTCA claims asserted are against the United States. (*See* Pls.' Opp'n [Doc. # 32] at 5.)

[2] Plaintiffs have withdrawn their claims of trespass and civil conspiracy under the FTCA. (*See* Pls.' Opp'n at 12, 24.)

I.    **Factual Allegations**

Plaintiffs allege the following in their Complaint. Plaintiff Lonny and Lea Bowers

reside and work in Connecticut. Mr. Bowers is an engineer who specializes in acoustics

and professional sound, and was the president and a director of Wideband Solutions, Inc.

("Wideband"). (Compl. [Doc. # 1] ¶ 9.) Mr. Bowers and Wideband were defendants in

several lawsuits filed by ClearOne Communications, Inc. ("ClearOne"), a Utah

Corporation, in which ClearOne alleged misappropriation of trade secrets. (*Id.* ¶ 11.) In

the course of that litigation, ClearOne sought, and the United States District Court for the

District of Utah granted, a confidentiality order prohibiting the dissemination of various

materials deemed by ClearOne to contain sensitive information regarding its trade

secrets. (*Id.* ¶ 11.)

On August 17, 2010, ClearOne filed an ex parte motion to enforce the

confidentiality order, alleging that Mr. Bowers "might have certain documents and

information in his possession in violation of the confidentiality order." (*Id.* ¶ 12.) The

motion was reviewed by a magistrate judge, and an order was issued on August 23, 2010.

(*Id.* ¶¶ 13–14.)[3] Defendant Tingley received a copy of the order, and reviewed it with the

United States Attorney's Office for the District of Connecticut. The U.S. Attorney's office

"proposed an indemnification clause which compels ClearOne to indemnify the U.S.

Marshals Service for any judgment arising from the execution of the order by the U.S.

---

[3] A report and recommendation was also filed under seal in the Utah Action, *ClearOne Communications v. Chiang et al.*, 7cv37(TC-DN), finding that given Mr. Bowers's past deceptions in the Utah action, ex parte relief was appropriate: "providing Bowers notice of the motion and the relief sought would enable Bowers's further concealment and cause ClearOne to continue to suffer the very type of immediate and irreparable injury that it seeks to avoid or minimize by the issuance of the order sought." (*See* Ex. E to Defs.' Mot. at 30.)

Marshals." (*Id.* ¶ 14.) A revised order including a hold harmless clause was issued on September 1, 2010. (Compl. ¶ 14; *see also* Ex. C. to Def.'s Mot. [Doc. # 25] ¶ 5.)[4]

On September 2, 2010, Mr. Bowers was stopped by two Deputy U.S. Marshals as he was leaving his office. They blocked his car to prevent him from leaving, and "explained that lawyers would be coming and would explain the reason for the detainment." (*Id.* ¶ 15.) Twenty minutes later, a lawyer arrived and provided Mr. Bowers with a redacted copy of the Order. (*Id.*) John Does 1 and 2 "compelled" Plaintiff to return to the building and "confined" him to a common area, "telling him he was not free to leave." (*Id.* ¶ 16.) During this time, a lawyer, data recovery specialist, and two ClearOne agents entered his office "with the help and assent of John Does 1 and 2." (*Id.*) The agents then "ransacked" his office and took computers, hard drives, data storage files, and documents, many of which Plaintiff alleges "were not ordered to be seized" in the Amended Rule 65 Order. (*Id.*)

At around the same time, two other U.S. Marshals, John Does 3 and 4, came to the Bowers residence and "confined Lea to the second floor of the house." (*Id.* ¶¶ 17–18.) An attorney and another ClearOne agent entered the Bowers residence with the "knowledge and assent" of Does 3 and 4 and "took numerous items which were not authorized by the [Amended Rule 65 Order]." (*Id.* ¶ 18.)

Plaintiffs allege that the documents that were taken included "tax return documents, privileged communications between Bowers and his attorneys, research and

---

[4] Because the Amended Rule 65 Order is referenced and relied on in the Complaint, the Court may consider it as part of Defendants' motion to dismiss. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) ("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.").

development memoranda regarding technology being developed by Lonny Bowers and his associates, attorney work–product, financial records, stock certificates, and a memory stick containing personal photographs," all of which were not authorized to be taken by the Amended Rule 65 Order. (*Id.* ¶ 19.)

The U.S. Marshals are alleged to have acted without a warrant or writ of attachment authorizing them to enter and search the premises of the Bowers' office or home. (*Id.* ¶ 20.) The Marshals did not "actually supervise[]" the ClearOne agents present at either location. (*Id.* ¶ 21.)

Plaintiffs allege that as a result of Defendants' conduct, ClearOne has "manufactured and sold a product . . . . which utilizes a headset interface technology co–developed by Lonny Bowers and described in research documents wrongfully seized and appropriated by ClearOne." (*Id.* ¶ 23.) Mr. Bowers has been deprived of "any and all copies of proprietary acoustic calculation software which he developed personally and used in his business prior to the seizure." (*Id.* ¶ 24.) Plaintiffs claim lost revenue, misappropriation of trade secrets, false imprisonment, trespass, and severe emotional distress on account of Defendants' conduct.

## II.   Discussion[5]

Defendants have moved to dismiss Plaintiffs' Complaint in its entirety, arguing that Plaintiffs have failed to state a valid *Bivens* claim against Defendant Tingley and Does

---

[5] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

1–4, and that Defendants Tingley and Does 1–4 are entitled to quasi–judicial absolute immunity for their actions taken in enforcing a valid court order or, alternatively, are entitled to qualified immunity. Defendants also assert that Plaintiffs have failed to state any tort claim against the United States under the FTCA.

### A.      Count One: Violations of the Fourth Amendment

The issue of whether United States Marshals acting to execute a valid court order are immune from suit on the basis of quasi–judicial immunity appears to be one of first impression in the Second Circuit. Because of this, the Court will first address the allegations of Plaintiffs' Fourth Amendment claim, which the Court concludes fail to state a plausible claim under *Iqbal*. However, as discussed below, even if the allegations were found to state a plausible Fourth Amendment claim, Defendants are entitled to either absolute quasi–judicial immunity or qualified immunity and Count One must be dismissed.

#### 1.      Bivens *Claim*

Plaintiffs allege that Tingley and Does 1–4 deprived them of their rights to be free from unreasonable searches and seizures in violation of the Fourth Amendment because Defendants had no warrant, the searches and seizures of their home and office were "not authorized by federal law," the Marshals "confined" Plaintiffs without a warrant or probable cause, they did not "comply with federal statutes and regulations regarding the service of process . . . and searches and seizures," "the order of the court was an order for civil contempt issued by the District of Utah, and the order was improperly served outside of the State of Utah," Defendants failed to supervise the third parties authorized to execute the order," and that the Marshals "failed to ensure as required by . . . order,

that the agents of ClearOne take only those items that were authorized to be taken by the order." (Compl. ¶ 34a–g.)

"A *Bivens* action enables a plaintiff to recover damages against federal defendants acting in their individual capacities where their conduct is found to violate constitutional rights." *Pimental*, 411 F. Supp. 2d at 127. "[T]he absence of any deprivation of a constitutional right is a basis for dismissal . . . under a Rule 12(b)(6) inquiry." *Van Eck v. Gallucci*, 321 F. Supp. 2d 368, 374 (D. Conn. 2004). The Fourth Amendment guarantee that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," U.S. Const. Amend. IV, carries a "central requirement . . . of reasonableness." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001).

The facts alleged in paragraph 34 of Plaintiffs' Complaint do not state plausible violations of Plaintiffs' Fourth Amendment rights. As an initial matter, Plaintiffs seem to be alleging that the Amended Rule 65 Order was invalid (*see* Compl. ¶ 34a, b, d, e, f, g), though they concede that they "do not dispute that the Amended Rule 65 Order from the District of Utah is 'valid legal process.'" (Pls.' Sur–Reply [Doc. # 34] at 1.) Plaintiffs also allege that they were confined and "effectively" arrested by Defendants, during the entirety of the ClearOne agents' search of their home and offices. The Amended Rule 65 Order authorized the Marshals accompanying ClearOne to "use all reasonable force necessary to gain access to the business office and storage unit, and to defend ClearOne's agents while executing this order." (Ex. C to Defs.' Mot. at ¶ 4.) Plaintiffs allege no facts suggesting that Defendants' conduct in accompanying and defending ClearOne's agents in execution of the court order was unreasonable and therefore unconstitutional. Rather, the facts as pled state that the U.S. Marshals were present, did not "actually supervise[]

the agents of ClearOne" (*see* Compl. ¶ 21), and confined Mr. and Mrs. Bowers in the office and house, respectively, for a limited period of time so that the ClearOne agents could complete their search pursuant to the court order. Such a limited detention has been held not to be an unreasonable use of force. *See Muehler v. Mena*, 544 U.S. 93, 100 (2005) (A two– to three–hour detention in handcuffs, where there was a valid search warrant, did not outweigh the government's "continuing safety interests" and therefore the detention was reasonable).

As alleged, the Complaint lacks any facts to support a plausible claim of unreasonable search and seizure as to the Marshals' use of force against Plaintiffs, particularly where the force used was pursuant to stated obligations under the Amended Rule 65 Order. Thus, the Complaint fails on its face to state a plausible claim for a violation of the Fourth Amendment as to Defendant Tingley and Does 1–4.

### 2. *Quasi–Judicial Absolute Immunity*

Defendants Tingley and Does 1–4 contend that as officials executing a facially valid court order, they are entitled to judicial immunity. "The entitlement of a government official to absolute immunity, protecting him from liability, from suit, and from any scrutiny of the motive for and reasonableness of his official actions, depends on the function he performs. Absolute immunity is rarely granted; qualified immunity is the norm." *Dorman v. Higgins*, 821 F.2d 133, 136 (2d Cir. 1987); *see also Mireles v. Waco*, 502 U.S. 9, 13 (holding that the fact that a judge's order was carried out by a police officer did not transform the order from a judicial action, and that therefore, the judge was absolutely immune from suit relating to that order).

"[S]ome officials who are not judges but 'who perform functions closely associated with the judicial process' have . . . been accorded such immunity." *Dorman v.*

*Higgins*, 821 F.2d at 137 (2d Cir. 1987) (citation omitted) (holding that federal probation officers are entitled to quasi–judicial absolute immunity when preparing presentence reports, because "in preparing presentence reports, a federal probation officer acts as an arm of the court and that that task is an integral part of one of the most critical phases of the judicial process.") (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985)). Several district courts in this Circuit have found the execution of valid court orders to entitle sheriffs and others to absolute quasi–judicial immunity. *See, e.g.*, *Morris v. Katz*, 11-CV-3556 (JG), 2011 WL 3918965 (E.D.N.Y. Sept. 4, 2011) (finding defendant city marshal was entitled to absolute quasi–judicial immunity: "[s]ince [plaintiff] seeks to hold Marshal Essock liable based upon his execution of a facially valid warrant of eviction in accordance with his duty to carry out mandates of the court, the action against him must be dismissed on the basis of quasi-judicial immunity."); *Maldonado v. New York County Sheriff*, No. 05Civ. 8377(JGK), 2006 WL 2588911, at *5 (S.D.N.Y. Sept. 6, 2006) ("because the function being performed is deemed integral to the judicial process, persons who faithfully execute valid court orders are absolutely immune from liability for damages in actions challenging conduct authorized by the order."); *Caporicci v. Nassau Cty. Police Dept.*, CV 05-5764, 2007 WL 764535(LDW) (E.D.N.Y. Mar. 6, 2007) ("When relying upon a facially valid warrant, a sheriff is "afforded complete protection from liability for any proper act done in its execution." . . . In view of this complete protection and the fact that Sheriff Reilly is sought to be held liable based upon his execution of a facially valid warrant, the action against him must be dismissed on the basis of quasi–judicial immunity."); *Tornheim v. Eason*, 363 F.Supp.2d 674, 676–77 (S.D.N.Y.2005) (same).

Other circuits have also recognized that where a defendant is acting pursuant to court order, he or she is absolutely immune. For instance, in *Roland v. Philips*, 19 F.3d

552, 556 (11th Cir. 1994), the Eleventh Circuit held that "law enforcement personnel, acting in furtherance of their official duties and relying on a facially valid court order, are entitled to absolute quasi–judicial immunity." The *Roland* Court concluded that a Sheriff "acting under a verbal judicial order" to incarcerate the plaintiff "after her reiterated refusal to activate water service for the Robinwood Subdivision," *id.* at 557, was protected by absolute quasi–judicial immunity. The court reasoned, "[t]he proper procedure for a party who contests a judicial order is to appeal that order and not to sue the official responsible for its execution." *Id.* (internal citations and punctuation omitted); *see also Valdez v. City & County of Denver*, 878 F.2d 1285, 1288 (10th Cir. 1989) ("Enforcing a court order or judgment is intrinsically associated with a judicial proceeding. . . . Absolute immunity for officials assigned to carry out a judge's orders is necessary to insure that such officials can perform their function without the need to secure permanent legal counsel.).

The Court finds that the facts alleged here—that Defendants were present at Plaintiffs' residence and workplace to execute a valid order from the Utah District Court— claim conduct that has "an integral relationship with the judicial process," *see Roland*, 19 F.3d at 556 (internal citation omitted), and thus the nature of the function performed appears to entitle Defendants to quasi–judicial absolute immunity.

### 3.      Qualified Immunity

However, even if Defendants were not entitled to absolute immunity, Defendants are nevertheless entitled to qualified immunity.

Government officials are immune from liability for civil damages when their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 230 (2009)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The two–pronged qualified immunity inquiry asks whether "the facts alleged show the officer's conduct violated a constitutional right," and if so, "whether the right was clearly established," such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001) (citations omitted).

As discussed above, the conduct alleged does not state a claim for a Fourth Amendment violation, but even if it did, Defendants are alleged to have been acting pursuant to a court order—one which provides that "ClearOne shall inspect the premises," "ClearOne may conduct the inspection without prior notice," "ClearOne shall carry out the inspection through its counsel of record," and "the United States Marshal, [and] the Marshal's personnel, . . . are authorized to . . . defend ClearOne's agents while executing this order." (Ex. C ¶ 4). It would not be clear to reasonable officers in Defendants' position that their conduct in detaining Plaintiffs for a limited time was unlawful, given that they were acting pursuant to a valid court order under which they were not responsible for the inspection and seizure of particular documents and information, and were required to "defend" the agents who were to conduct the inspection. Therefore, Defendants are entitled to qualified immunity.

Thus, for the reasons discussed above, the Court finds that Count One of the Complaint must be dismissed.

### B.  Count Two: Claims under the FTCA

In Count Two, Plaintiffs sue under the FTCA, which waives the Government's liability for certain torts committed by federal employees. *See* 28 U.S.C. § 2674. Plaintiffs allege false imprisonment, intentional or negligent infliction of emotional distress, negligent selection, supervision, and retention of agents and employees, negligent failure

to supervise parties accompanying U.S. Marshals, trespass to or interference with chattels, conversion, and misappropriation of trade secrets. (*See* Compl. ⸹ 38.) The liability of the United States under the FTCA is subject to a discretionary function exception, *see* 28 U.S.C. § 2680(a); *United States v. Gaubert*, 499 U.S. 315, 322 (1991), which Defendants argue is applicable here.

### 1.   Discretionary Function Exception

The discretionary function exception, codified at 28 U.S.C. § 2680(a), exempts from liability under the FTCA:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

"The purpose of the discretionary function exception is to "prevent judicial 'second–guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Callahan v. United States*, 329 F. Supp. 2d 404, 407 (S.D.N.Y. 2004) (citing *Gaubert*, 499 U.S. at 323). To determine whether the discretionary function exception applies, one must consider whether (1) the challenged conduct involves "an element of judgment or choice," *Gaubert*, 499 U.S. at 322, and whether (2) the judgment is based on policy considerations, *id.* at 323.

Defendants contend that the negligent supervision/failure to supervise claims should be dismissed on account of the discretionary function exception to the FTCA. "[T]here is no doubt that planning–level decisions establishing programs are protected by the discretionary function exception. . . . In addition, the actions of Government agents

involving the necessary element of choice and grounded in the social, economic, or political goals of the statute and regulations are protected." *Gaubert*, 499 U.S. at 323.

Defendant Marshals were tasked with supervising the execution of the Amended Rule 65 Order, which provided that the Marshals were "to use all reasonable force necessary . . . and to defend ClearOne's agents while executing this Order." (Ex. C to Defs.' Mot. ¶ 4.) Further, 28 U .S.C. § 566(a) states that "[i]t is the primary role and mission of the United States Marshals Service to provide for the security and to obey, execute, and enforce all orders of the United States District Courts." Neither of these directives "specifically prescribes a course of action for an employee to follow." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988) ("the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive.").

In *Callahan*, 329 F. Supp. 2d at 407, the district held that the plaintiffs' claims of trespass and nuisance—allegations that the U.S. Marshal Service committed these torts while providing security to the plaintiffs' next door neighbor, Judge Mukasey—met both prongs of the discretionary function test, and thus that their claims had to be dismissed for lack of subject matter jurisdiction. The district court reasoned that:

> it is clear from the statutory scheme that Congress has left to the discretion of the Marshals Service how to protect federal judges who are threatened. *See* 28 U.S.C. § 566. The statute generally defines the Marshals Service's powers and duties and authorizes the Marshals Service to "provide for the personal protection of Federal jurists." 28 U.S.C. § 566(e)(1)(A). However, the statute does not proscribe the manner in which the Marshals Service should fulfill its protective obligations. *Id.* Also, the applicable federal regulations do not require the Marshals Service to follow any particular approach to the planning or carrying out of its protective assignments.

329 F. Supp. 2d at 408.

Plaintiffs' claims involve contentions that the Defendant Marshals did not execute the Amended Rule 65 Order in the manner Plaintiffs thought appropriate. Defendants' chosen manner of executing the order, however, is subject to the discretionary function exception, as the order did not "specifically prescribe a course of action" for Defendants to follow. Because Plaintiffs' claims of negligent selection and supervision and negligent failure to supervise involve elements of judgment and choice as to how best to execute this court order, these claims are dismissed pursuant to the discretionary function exception.

### 2.      Plaintiffs' Remaining FTCA Claims

As to the remaining claims, Defendants contend that Plaintiffs have failed to state any claim that would meet the plausibility requirements of *Iqbal*.

### a.      False Imprisonment/False Arrest

In Connecticut, "[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Green, v. Donroe*, 186 Conn. 265, 267 (1982). In a false arrest action, "Connecticut law places the burden of proving an unlawful arrest on the plaintiff." *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007). In opposition, Plaintiffs argue that there was no arrest warrant authorizing the Marshals to place Plaintiffs under arrest. The Complaint only alleges that Plaintiffs were confined by the Marshals during the period of time in which ClearOne's agents were searching the Bowers home and office and does not allege that the Marshals were acting unlawfully in executing the Amended Rule 65 Order. Though Plaintiffs argue that an order pursuant to Rule 65 is not the same as a search warrant and that comparatively "[a] search warrant . . .

requires very detailed procedures" (Pls.' Opp'n),[6] they do not explain why the temporary confinement undertaken by the Marshals pursuant to a valid Rule 65 Order would not constitute "lawful" action. As the allegations of the Complaint show that Defendants' actions were taken as a result of a court order, Plaintiffs fail to state a plausible claim of false imprisonment or false arrest under Connecticut law.

b. Trespass to Chattels and Conversion

Under Connecticut law, trespass to chattels is defined as "intentionally dispossessing another of the chattel, or using or intermeddling with a chattel in the possession of another." *Simms v. Chaisson*, 277 Conn. 319, 331 (Conn. 2006). There are no facts alleged here that suggest that Defendants themselves "intentionally dispossessed" Plaintiffs of any items taken, nor that they "used or intermeddled" with the items taken by ClearOne agents.[7]   Thus, Plaintiffs' trespass to chattels claim must be dismissed.

Conversion is the "unauthorized assumption and exercise of the right of ownership that interferes and harms the owner's rights to that property." *Yeomans v. Wallace*, 291 F. Supp. 2d 70, 76–77 (D. Conn. 2003) (citing *Suarez–Negrete v. Trotta*, 47 Conn. App. 517, 521 (1998)). "The plaintiff need not allege that the unauthorized possession of the property was intentional," but must allege "that he was harmed in order

---

[6] Contrary to Plaintiffs' assertion that a search warrant requires more "detailed" process than those justifying an order under Rule 65, the Amended Rule 65 Order at issue here was issued pursuant to a very detailed process: the Magistrate Judge in the District of Utah issued a fifty–three–page Report and Recommendation listing the factual determinations and legal conclusions supporting a grant of ClearOne's ex parte motion for an order pursuant to Rule 65. (*See* Report and Recommendation, Ex. E to Defs.' Mot.)

[7] Though Plaintiffs argue that the Marshals were required to "take precautions to safeguard possessions taken during the execution of an authorized search," they cite only to the Federal Rules of Criminal Procedure in support of this statement, and the Amended Rule 65 Order as well as the Complaint are both silent on this point.

to state a claim for conversion." *Id.* "[A]t a minimum, the plaintiff must allege that the defendants . . . have taken the plaintiff's property and retained possession of those items, treating them as their own."

There are no allegations that the Defendant *Marshals* took Plaintiffs' property and retained possession of the items seized. Thus, Plaintiffs' conversion claims must be dismissed.

c.      Misappropriation of Trade Secrets

Section 35-51(b) of CUTSA defines misappropriation as

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who (A) used improper means to acquire knowledge of the trade secret; or (B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was (i) derived from or through a person who had utilized improper means to acquire it; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . ; (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (C) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Plaintiffs argue that Defendants violated Conn. Gen. Stat. § 35-51(b)(2)(B)(ii)—that is, that Defendants knew or had reason to know that their knowledge of the trade secrets was "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." (Pls.' Opp'n at 17.) However, there are no allegations that Defendants had any knowledge of Plaintiffs' trade secrets.

"[A] violation of CUTSA occurs only if the defendant either wrongfully acquired the plaintiff's trade secret or used or disclosed the trade secret." *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 750 (2d Cir. 1998). Defendants are not alleged to

15

have acquired, used or disclosed Plaintiffs' protected information, and while Plaintiffs assert in their opposition (but do not allege in their Complaint) that Defendants were under a duty to protect the information because there was an agency relationship between Defendants and ClearOne, the Complaint alleges no facts that would establish a plausible agency relationship of this kind. Thus, Plaintiffs' misappropriation of trade secrets claim is also dismissed.

d.      Intentional and Negligent Infliction of Emotional Distress

For a plaintiff to state a claim for intentional infliction of emotional distress ("IIED"), he or she must allege facts showing:

> (1) that the actor intended to inflict emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the Defendant's conduct was the cause of the Plaintiff's distress; and (4) that the emotional distress sustained by the Plaintiff was severe.

*Petyan v. Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000).

The conduct alleged in the Complaint, i.e., that Defendants "confined" Plaintiffs while ClearOne agents inspected their personal property, falls far short of the level of extreme and outrageous conduct required to state a claim for IIED, nor do Plaintiffs allege that it was specifically Defendants' conduct, as opposed to the ClearOne agents "ransacking" Plaintiffs' office and home, that was the cause of their distress. As such, Plaintiffs' allegations do not state a plausible IIED claim.

To state a claim for negligent infliction of emotional distress ("NIED"), a plaintiff must plead: (1) the defendant's conduct created an unreasonable risk of causing the

16

plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress. *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003).

Plaintiffs allege that "[a]s a direct and proximate result of the actions of the defendants, Lonny Bowers and Lea Bowers have suffered severe emotional distress, mental anguish, humiliation and embarrassment." (Compl. ¶ 30.) These allegations are, at most, threadbare recitations of an NIED cause of action and do not allege facts that could show that the emotional distress suffered "was severe enough that it might result in illness or bodily harm," *Carrol*, 262 Conn. at 444, nor that Defendants' conduct created an "unreasonable risk" of causing Plaintiffs emotional distress. Thus, as it lacks plausibility, the NIED claim will be dismissed.

e.      Negligent Supervision

Even if the discretionary function exception were not to bar Plaintiffs' negligent supervision claims, the Complaint fails to state a claim for negligent supervision.

Under Connecticut law, an employer may be liable for negligent supervision of its employees:

> [a] plaintiff must plead and prove that she suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise. A defendant does not owe a duty of care to protect a plaintiff from another employee's tortious acts unless the defendant knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct.

*Roberts v. Circuit–Wise, Inc.*, 142 F. Supp.2d 211, 214 (D. Conn. 2001); *see also Gutierrez v. Thorne*, 13 Conn. App. 493, 500 (1988).

Here, there are no allegations that the Defendant Marshals had any duty to supervise the ClearOne agents, or to protect Plaintiffs from ClearOne. Indeed the Amended Rule 65 Order charges Defendants with "defend[ing] ClearOne's agents while executing this order" (Ex. C to Defs.' Mot. ¶ 4), and the Complaint alleges no existence of a duty to supervise ClearOne's agents, nor that Defendants "knew or reasonably should have known" of ClearOne's propensity to engage in tortious conduct. Plaintiffs' negligent supervision claims must be dismissed for failure to state a negligent supervision claim.

**III.     Conclusion**

For the reasons discussed above, Defendants' motion to dismiss is granted in its entirety. The Clerk is directed to close the case.


IT IS SO ORDERED.

          /s/
Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 13th day of March, 2013.